IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDWARD DONNELL THOMAS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-212-STE |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

  I.  **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 22-29). The

Appeals Council denied Plaintiff's request for review. (TR. 8-15). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2012, the alleged disability onset date. (TR. 24). At step two, the ALJ determined that Plaintiff had the following severe impairments: shoulder impingement, degenerative disc disease, an affective disorder, and an anxiety disorder. (TR. 24). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 24).

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work. (TR. 27). The ALJ further concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following additional limitations:

> [Plaintiff] can occasionally stoop, lift, crouch, reach[] bilaterally overhead, and use . . . stairs and ramps. [Plaintiff] can never climb ladder[s], ropes, and scaffolds. [Plaintiff] can have no interaction with general public and only occasional interaction with supervisors and co-workers.

(TR. 25).

With this RFC, the ALJ made additional findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 47-48). Relying upon

the testimony of the VE, the ALJ concluded that Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 28-29).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in (1) failing to consider medical records dated before the date of onset and after the date last insured; and (2) failing to include sufficient limitations in the RFC. (ECF No. 19:19, 22).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS

Plaintiff argues that the ALJ improperly limited his review of the medical evidence to records dated between August 1, 2012 (the alleged onset date)[1] and March 31, 2014 (the date last insured (DLI)). (ECF No. 19:18-19). Plaintiff is correct. The ALJ stated that

---

[1] The ALJ cites August 1, 2012 as the alleged onset date, though at the hearing Plaintiff clarified that the correct date was August 1, 2013. (TR. 24, 36).

3

"[m]uch of the documentary medical record addresses the period prior to [Plaintiff's] alleged onset date or subsequent to the expiration of [Plaintiff's] insured status and is therefore of limited weight in assessing [Plaintiff's] functional capacity during the relevant period." (TR. 26). Although Plaintiff's medical record is voluminous, the ALJ's brief discussion of the medical evidence included references only to records within the limited time period when Plaintiff was insured. (TR. 26-27).

A claim of disability may be supported by direct evidence or indirect evidence. Without doubt, medical records during an insured period are direct evidence of a claimant's condition during that period. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir.1993). Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); *Baca*, 5 F.3d at 479 (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the insured period). Here, the ALJ considered neither.

Plaintiff's medical record is comprised of over 1400 pages ranging in date from June 1989 to November 2015. (TR. 258-1697). And though some of those records might be of limited value in determining Plaintiff's RFC during the insured period, it was error for the ALJ to completely disregard all of the records from outside the insured period. *Cf. Baca*, 5 F.3d at 479 (finding error when the ALJ ignored medical records dated within

4

fourteen months of plaintiff's DLI). In addition, upon the Court's review of the records from within the insured period, it became apparent that the ALJ only minimally considered some evidence, while ignoring other evidence. This too was error. *See Hamlin*, 365 F.3d at 1219 ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

## A. Mental Impairments

For instance, Plaintiff applied for disability benefits based in part on post-traumatic stress disorder (PTSD), anxiety, and anger issues. (TR. 37, 184). The ALJ found that anxiety was a severe impairment at step two, but the ALJ's decision did not mention PTSD, only once referenced Plaintiff's testimony regarding anger problems, and did not discuss the impact PTSD/anxiety/anger had on Plaintiff's RFC. *See* TR. 24, 26-27. The ALJ began his discussion of Plaintiff's mental health by stating that "[o]n February 22, 2013, [Plaintiff's] diagnoses were noted to include alcohol abuse." (TR. 27). But the ALJ failed to discuss any other aspects of that Psychosocial Assessment, including the symptoms and diagnoses of anxiety, depression, and PTSD. *See* TR. 27; 1126-31.[2] And in the remainder of his brief discussion of the medical record, the ALJ mentioned several mental status examinations, but noted only negative findings including orientation in all

---

[2] Though Plaintiff's alcohol use was not at issue in the ALJ's decision, the Court notes that the ALJ did not acknowledge other records indicating that Plaintiff did not abuse alcohol. *See, e.g.,* TR. 973, 1199.

spheres; fluent speech; linear thought processes; euthymic mood and affect; and memory and concentration within normal limits. (TR. 27).

The ALJ failed to acknowledge that the mental status exams had been conducted by VA psychiatrist Sean Michael Whelan, MD, as part of Plaintiff's on-going care for PTSD. The ALJ also failed to discuss that, during those exams, Dr. Whelan consistently indicated that Plaintiff was very angry (including angry mood/affect) and intermittently noted that his medications were not effective. *See* TR. 27; TR. 1121-24 (5/23/13 progress note); 1097-1100 (7/26/13 progress note); 1069-71 (9/26/13 progress note);[3] 1040-42 (12/13/13 progress note); 1003-06 (3/4/13 progress note). The ALJ did not discuss additional progress notes from Dr. Whelan, which also referenced Plaintiff's anger and medication issues. *See, e.g.,* TR. 959-62 (5/29/14 progress note indicating side effects from medication); 908-17 (8/12/14 progress note indicating that Plaintiff had had recent fist fights with family members and discussing that risks for medicine "are severe . . . but the risks of his cont[inuing] to live this angry [are] likely worse"); 821-24 (11/17/14 progress note indicating improvement and adjusting medication dosage due to side effects; addendum indicating medication not effective).

In his decision, the ALJ also noted three physical examinations, again mentioning only those findings favorable to a finding of nondisability. (TR. 27). But the March 13,

---

[3] The ALJ cites to the September 26, 2013, progress note that Plaintiff was "in school." (TR. 27). But the ALJ did not mention that the progress note indicated that Plaintiff was "struggling" in school due to frustration and stress. *See* TR. 27, 1069. The ALJ also did not appear to recognize that Plaintiff had withdrawn from in-school classes due to anxiety/PTSD, and was then in online school. *See* TR. 27, 1003 (Dr. Whelan indicating that Plaintiff was having "a very difficult time w/ motivation to complete his online classes but an even harder time focusing on and remembering the information); *see also* TR. 191, 958, 1127, 1141.

2014 exam, a physical exam conducted primarily for shoulder and neck pain, included the assessment that Plaintiff was being seen by Dr. Whelan for depression and anger, which the ALJ failed to mention. (TR. 996-99). The March 31, 2014 exam, which was conducted by a dietician for weight management purposes, also noted Plaintiff's "depression and anger issues," which the ALJ failed to mention. (TR. 986-87). And the June 21, 2013, exam was a physical exam conducted primarily for a cough and a tick bite; the focus of the exam was not Plaintiff's mental functioning. (TR. 1108-1111).

The ALJ also failed to discuss the December 23, 2014 statement of Kenneth Dick, Ph.D., who, after examining Plaintiff, found that his "psychological symptoms [were] consistent with the diagnosis of PTSD with severe intermittent explosive anger." Dr. Dick further stated that "[t]here is evidence of marked distress, severe impairment in functioning especially with significant thinking and concentration problems accompanied by prominent distress and dysphoria. . . . He has dysfunctional thinking pattern that includes magical and possible delusional beliefs." (TR. 270). Though this record postdates Plaintiff's DLI by approximately 9 months, the ALJ should have considered it. *See Baca*, 5 F.3d at 479 ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." (internal quotation marks omitted)); *accord Miller v. Chater*, 99 F.3d

972, 977 (10th Cir. 1996) (finding that it was legal error if the ALJ did not consider medical evidence because it postdated the DLI).

Finally, the ALJ did not mention the VA's disability rating. Plaintiff's records show that he served in the Army from October 20, 1988, to August 14, 1991. (TR. 145-54). His earlier medical records indicate a service connection disability rating of 60%, *see, e.g.,* TR. 1258 (April 4, 2012), and effective October 15, 2014, his disability rating was increased to 100%. (TR. 241). Plaintiff's 100% disability rating was based upon degenerative arthritis of the spine (100%), anxiety disorder (70%), migraine headaches (30%), limited motion of arm (20%), inflammation of upper radicular nerves (20%), superficial scars (20%), limited motion of arm (20%), tinnitus (10%), and superficial scars (10%).[4] *See, e.g.,* TR. 359; *see also* TR. 145-54. "Although findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca*, 5 F.3d at 480. Failure to do so is error. *Id.*; *see also* 20 C.F.R. § 404.1512(b)(1)(v)[5] (stating SSA will consider "[d]ecisions by any governmental or nongovernmental agency" concerning disability); SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (explaining that the Commissioner is "required to evaluate all the evidence

---

[4] VA disability compensation is a monthly benefit paid to veterans who are at least 10% disabled due to injuries or diseases that were incurred in or aggravated during active duty, active duty for training, or inactive duty training. The benefit amount is graduated, in increments of 10%, according to the degree of the veteran's disability and can apply to physical and mental health conditions. United States Department of Veterans Affairs, *Disability Compensation,* http://www.benefits.va.gov/COMPENSATION/types-disability.asp (last updated Jan. 19, 2018).

[5] Effective March 27, 2017, the regulations governing the SSA's review of decisions by other governmental agencies changed. 82 Fed. Reg. 5863 (Jan. 18, 2017). The quoted language was in effect at the time of the ALJ's decision.

in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies").

### B. Physical Impairments

The errors that permeate the ALJ's discussion of Plaintiff's mental impairments also afflict the ALJ's discussion of Plaintiff's physical impairments. Again, Plaintiff's medical records contain over 1400 pages, relatively few of the records are dated significantly outside of the insured period, yet the ALJ discussed only six medical records relevant to Plaintiff's physical impairments and mentioned only those findings favorable to a finding of nondisability. This was error. *Cf. Hamlin*, 365 F.3d at 1215, 1219; *Baca*, 5 F.3d at 479; *Hardman*, 362 F.3d at 681. The ALJ also erred in failing to discuss the VA's combined disability rating of 100% or the individual rated disabilities for Plaintiff's various impairments. *Cf. Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (instructing that an ALJ "must consider" another agency's assessment "and explain why he did not find it persuasive."); *see also* 20 C.F.R. § 404.1512(b)(1)(v).

"The record must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Though "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10. An ALJ may not pick and choose among uncontroverted evidence, taking only those parts that are favorable to a finding of nondisability but instead must consider all significantly probative evidence in the record. The ALJ's decision does not meet these standards. Because the ALJ failed to properly consider medical records dated outside the insured

9

period as indirect evidence of Plaintiff's functioning during the insured period, and further discussed some evidence but excluded contrasting evidence, the ALJ did not demonstrate that he properly considered all of the evidence. Accordingly, the case must be remanded for further consideration.[6]

### C. Insufficiency of the Evidence

The Court notes that despite Plaintiff's VA disability rating and comprehensive medical record, upon initial consideration and reconsideration, the State Agency consultants found there was "insufficient evidence" to evaluate the claim, due in part to a lack of medical or other opinion evidence. (TR. 52-57, 61-67). The consultants also cited to a lack of physical and mental RFC assessments. (TR. 57, 66).

The SSA expressly requires the ALJ to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). And though the Commissioner "has broad latitude in ordering consultative examinations," *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), SSA regulations indicate that the Commissioner may purchase a consultative examination "when the evidence as a whole is insufficient to allow [her] to make a determination or decision on [a] claim." 20 C.F.R. § 404.1519a(b). Under the relevant regulatory guidelines, Plaintiff's claim appears to have warranted consultative examinations because "the evidence as a whole [was] insufficient" to allow the consultants to make a

---

[6] Because these issues alone warrant remand, the Court need not address the other claim of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

determination. Upon remand, the ALJ will expressly consider whether to order consultative examinations to provide evidence regarding Plaintiff's physical and mental impairments and any resulting functional limitations.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on January 30, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE